

Marian F. Harrison
US Bankruptcy Judge

Dated: 12/8/2016

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO.  315-01641 |
| FREDERICK ARNEMAN COOPER, ) | |
| AND KATHERINE HARRISON COOPER, ) | JUDGE MARIAN F. HARRISON |
| ) | |
| Debtors. ) | CHAPTER 7 |
| ) | |
| ) | |
| SAMUEL K. CROCKER, ) | |
| UNITED STATES TRUSTEE, REGION 8, ) | ADV. NO. 315-90523 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FREDERICK ARNEMAN COOPER, ) | |
| AND KATHERINE HARRISON COOPER. ) | |
| ) | |
| Defendants. ) | |

_____

## MEMORANDUM OPINION

_____


Samuel K. Crocker, United States Trustee for Region 8 (hereinafter "U.S. Trustee"),

filed the above-styled adversary complaint to determine whether the debtors should be denied

a discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5).[1] For the following reasons, which represent the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1), as incorporated by Federal Rule of Bankruptcy Procedure 7052, the Court finds that the debtors should be denied a discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4).

# I. FACTS

The debtors filed their Chapter 7 petition on March 13, 2015, but Schedules and the Statement of Financial Affairs were not filed until March 19, 2015. According to the debtors, their personal bankruptcy was precipitated by shareholder disputes at Western Funding Incorporated (hereinafter "WFI"). The petition indicated that this was a "No Asset" case. On April 10, 2015, the debtors filed their first amended Schedule F and Statement of Financial Affairs to add Guerin Senter as a creditor and his lawsuit against the debtors. No additional assets were disclosed at that time. In reviewing the debtors' pleadings, the Chapter 7 Trustee saw red flags regarding the valuation of the debtors' residence and the lack of personal property. She was also contacted by the Trustee in the WFI bankruptcy case about possible undervalued and undisclosed personal property owned by the debtors. Thereafter, the Chapter 7 Trustee hired Ethan Massa (hereinafter "Mr. Massa") to catalog and appraise the debtors' personal property.

---

[1]At trial, the U.S. Trustee only pursued his objections to discharge under 11 U.S.C. §§ 727(a)(2) and (a)(4).

On April 17, 2015, Mr. Massa conducted a "surprise inventory" of the debtors' assets located at their residence. Mr. Massa discovered substantial personal property that had not been disclosed in the debtors' Schedules, including artwork, jewelry, and firearms. The debtors testified that Mr. Massa's visit was not unexpected because their attorney had indicated that an agent of the Trustee might come. Mr. Cooper allowed Mr. Massa into the home and did not stop him from inventorying their property. Mr. Massa testified that Mr. Cooper seemed surprised and agitated during the visit but did not interfere with his inventorying. The meeting of creditors was held on April 20, 2015. Prior to the beginning of their meeting of creditors, the debtors watched a video presentation on a debtor's responsibilities in Chapter 7. The debtors swore under oath that they had reviewed and signed their Chapter 7 petition. They testified at the meeting of creditors that there was a mis-communication with their attorney. The debtors had believed that they were only to list the personal property they intended to keep and that the Trustee's representative would come and take everything else. The debtors could not explain how they thought the Trustee would know what other assets were in the estate if not listed on the debtors' Schedules.

On May 25, 2015, the debtors amended their Schedules to reflect the additional property found by Mr. Massa and amended their Statement of Financial Affairs. This amendment was not particularly helpful. On Schedule B, the debtors added the following personal property:

3 - U.S. Bankruptcy Court, M.D. Tenn.

Gas grill, patio heater, buffet, 3 lamps, 2 area rugs, misc. jewelry & watches, misc decor, 4 prints/lithos, several sculptures/statutes, HP printer, Lenovo laptop, Apple laptop, Apple desktop, kitchens jars/decor, misc horse tack & saddles, grandfather clock (broken), misc figurines, 2 door cabinet, 2 drawer lateral file cabinet, guitar, washer/dryer, dog cage, lawnmower, misc tools, ladder, steel supply cabinet, safe, jars/mugs and decorative accessories, chest freezer, various rifles, handguns and accessories/ammo.

The value of all this property was listed as "Unknown." A Kubota four wheeler, later sold for $9051, and a saxophone, later sold for more than $200, were not listed in the debtors' amended Schedule B. The undisclosed personal property was eventually sold at auction by Mr. Massa for $60,033.34. The debtors amended their Statement of Financial Affairs on June 14, 2015.

On their original Schedules, the debtors only listed four rifles with an aggregate value of $750. It turned out that the debtors owned a substantial number of guns. These were not listed until Schedule B was amended on May 25, 2015. Some guns were sold, for approximately $23,000, on consignment at Franklin Gun Shop during the months prior to the debtors filing their bankruptcy petition. These prior sales were not disclosed until the third amended Statement of Financial Affairs was filed on June 14, 2015. Other guns that were still on consignment at Franklin Gun Shop were sold post-petition for $3664. When the debtors received the check for the post-petition sales, they notified the Trustee and turned over the $3664 received. The debtors testified that they did not know there were still guns on consignment until after they received a check in the mail. Other guns were discovered at the debtors' home during Mr. Massa's visit. As with the other undisclosed personal

4 - U.S. Bankruptcy Court, M.D. Tenn.

property, the debtors testified that they did not disclose these guns because they did not intend to keep them.

In addition, the debtors did not disclose the pre-petition sale of a 1960 Austin Healy Sprite for $3500 until the second amended Statement of Financial Affairs on May 25, 2015, or the transfer of a horse barn in exchange for boarding until the third amended Statement of Financial Affairs on June 14, 2015. The debtors valued their house at $330,000, even though they bought it in 2014 for $405,000. The Trustee eventually sold the house for $400,000. The debtors testified that they valued the house at $330,000 because of significant problems with the foundation and septic system.

The debtors are educated and have significant business experience. Mr. Cooper has a degree in business administration. He founded Sea West Financial, an indirect auto finance company, in 1992. He was the president and CEO of that company until it was sold in 2004. In 2004, Mr. Cooper founded Harbor Auto Finance, also an indirect auto finance company. He stayed there until the acquisition of WFI, another indirect auto finance company, in 2010. Mr. Cooper was the CEO of WFI with an annual salary of $300,000.

Mrs. Cooper also has a degree in business administration. She has worked as an administrator in hospitals and for groups of doctors. Mrs. Cooper started working at Sea West Financial in 2001 and was the director of operations in 2004. In 2006, Mrs. Cooper

5 - U.S. Bankruptcy Court, M.D. Tenn.

was employed by Harbor Auto Finance as a junior partner.  In 2010, Mrs. Cooper worked for WFI, holding the positions of executive vice president and chief operating officer.  Her annual salary was $275,000.

The debtors also have bankruptcy experience.  In 2013, WFI filed a voluntary Chapter 11 petition in Nevada.  The assets in that case were listed as being over $48 million.  Mr. Cooper, as CEO and a director of WFI, signed all the pleadings on behalf of WFI and testified at the WFI meeting of creditors and at other hearings in the case.  Mrs. Cooper, as COO, also signed verified statements in the WFI case.  That same year, the debtors filed a Chapter 11 petition on behalf of Global Track GPS, LLC (hereinafter "GPS").  Mr. Cooper signed the petition for GPS as president and manager.  The debtors were listed as having a 100% membership interest as husband and wife in GPS.

Mrs. Cooper also has personal experience in bankruptcy, having filed a Chapter 7 petition in the 1980s and another Chapter 7 petition in the 1990s.  She received a discharge in both cases.

In the present case, Todd Jackson (hereinafter "Mr. Jackson"), bankruptcy counsel, initially met with the debtors in January 2015.  Mr. Jackson testified that the debtors came to see him because summary judgment had been granted against them in an Ohio lawsuit.  The debtors were going to try to get relief from the judgment in Ohio, with bankruptcy being

their backup plan.  The debtors came back to see Mr. Jackson in February 2015 and filled out a questionnaire online and submitted it to Mr. Jackson near the end of the month.  The answers on the questionnaire were used by Mr. Jackson to draft the debtors' Schedules and Statement of Financial Affairs.  As part of the questionnaire, the debtors had to list different kinds of personal property that they owned.  Nothing on the questionnaire indicated that the debtors were only to list property they wished to keep.  Mr. Jackson met with the debtors and went over the petition line-by-line before the debtors signed the petition, which was filed with the Court on March 13, 2015.

On Schedule B, debtors are instructed to "list all personal property of the debtor of whatever kind."  The debtors testified that they interpreted this to mean only list the personal property you want to keep.  On the Statement of Financial Affairs, Question 4, debtors are instructed to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately proceeding the filing of this bankruptcy case."  The debtors failed to include a pending civil suit filed against them by Guerin Senter on Schedule F or their Statement of Financial Affairs until they filed their first amendment to the Schedules and Statement of Financial Affairs on April 10, 2015.  The Senter lawsuit, seeking $1,483,268, was filed in 2013 for claims related to wrongful termination of employment.  Mr. Cooper testified that they did not list the Senter cause of action because he did not believe it was pending at the time.

In Question 10, debtors are instructed to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of the case." The debtors sold firearms on consignment for approximately $23,000 during the months prior to filing for bankruptcy and continued to have guns on consignment post-petition, but none of these were listed by the debtors until the June 14, 2015, amendments to their Statement of Financial Affairs. The debtors testified that the money from pre-petition sales was used for living expenses.

In Question 18, debtors are instructed to "list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case." The debtors failed to list their 100% membership interest in GPS in their original Statement of Financial Affairs or any of their subsequent amendments. When asked why this was not listed in question 18, Mr. Cooper testified that essentially all of GPS's assets were being attributed to the estate of WFI and that they simply forgot to list it because they did not think of GPS as a separate entity.

8 - U.S. Bankruptcy Court, M.D. Tenn.

In Question 19(d), debtors are instructed to "[l]ist all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case." Mr. Cooper testified that they did not list their 2014 residential loan application on this question because he did not think applying for a mortgage was a financial statement.

The U.S. Trustee filed this adversary complaint on December 16, 2015.

## II. DISCUSSION

The U.S. Trustee requests that the debtors be denied a discharge based on 11 U.S.C. §§ 727(a)(2) and (a)(4). The primary purpose behind the Bankruptcy Code is to "relieve an honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citation omitted). Discharge under Chapter 7 is governed by 11 U.S.C. § 727, which provides, in material part:

> (a) The court shall grant the debtor a discharge, unless—
>
> > * * * *
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> >
> > > (A) property of the debtor, within one year before the date of the filing of the petition; or

9 - U.S. Bankruptcy Court, M.D. Tenn.

(B) property of the estate, after the date of the
filing of the petition;

* * * *

(4) the debtor knowingly and fraudulently, in or in connection
with the case—

(A) made a false oath or account.

Federal Rule of Bankruptcy Procedure 4005 states that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." The standard of proof is a preponderance of the evidence. *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 683 (6th Cir. 2000) (citations omitted). "The burden of showing something by a 'preponderance of the evidence' . . . 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" *Apts. at Cambridge Co., L.L.C. v. Lewiston (In re Lewiston)*, 537 B.R. 808, 815 (Bankr. E.D. Mich. 2015) (citations omitted).

## A. 11 U.S.C. § 727(a)(2)

Pursuant to 11 U.S.C. § 727(a)(2), a court shall grant a debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . . – (A) property of the debtor, within one year before the date of the filing of

10 - U.S. Bankruptcy Court, M.D. Tenn.

the petition; or (B) property of the estate, after the date of filing the petition." The movant must prove that the debtor had actual intent to deceive, but "because of the inherent difficulties in proving intent, circumstantial evidence, including evidence of the debtor's conduct, may be used to establish his intent. *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 350 (Bankr. E.D. Tenn. 2006) (citation omitted). Concealment is defined to include "the withholding of knowledge of an asset by the failure or refusal to divulge information required by law to be made known." *Buckeye Ret. Co., LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008) (citation omitted).

The U.S. Trustee asserts that the debtors concealed personal property of the bankruptcy estate with the intent to defraud the Chapter 7 Trustee and retain the property. This property, which later sold for over $60,000, remained concealed until the agent for the Chapter 7 Trustee conducted a surprise inventory of the debtors' house. Additionally, the debtors concealed guns that were on consignment at Franklin Gun Shop and sold post-petition for $3664. The U.S. Trustee further argues that the debtors' attempts to excuse their fraudulent behavior are belied by their financial sophistication, their prior experience with the bankruptcy system, and their failure to disclose the concealed property to their bankruptcy attorney.

The debtors assert that they were not intentionally concealing property. Instead, the debtors testified that it was their mistaken belief that only personal property they intended

to claim as exempt needed to be listed in their petition. The debtors testified that they did not realize they had misunderstood the process until Mr. Massa conducted his inventory and they attended the meeting of creditors. According to the debtors, this interpretation is supported by the fact that they did not try to conceal any personal property during Mr. Massa's visit.

The debtors are educated and sophisticated business persons who have experience within the bankruptcy system. The debtors offered excuses for failing to disclose all of their property, but the Court finds that their explanations are not plausible given the debtors' education and experience. While the purpose of bankruptcy is to provide a fresh start, debtors must disclose all property of the estate so that the Trustee can determine what assets are available for the benefit of creditors. It is nonsensical to think that the Trustee could identify and liquidate the estate when the debtors only disclose the assets they intend to keep. After hearing the debtors' testimony and assessing their demeanor, the Court finds that the debtors' explanations are simply not credible. *See Kelly v. Mace (In re Mace),* 573 Fed. App'x 490, 496 (6th Cir. 2014) (citation omitted) (bankruptcy court had "opportunity to observe these witnesses on the stand, assess their demeanor and review the evidence"); *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 362 (6th Cir. 2007) (citation omitted) (trier of fact is competent to assess and credit the testimony of witnesses). The only conclusion this Court can reach based on the debtors' actions, education,

experience, and demeanor is that they hoped the Trustee would simply rely on their disclosures or would at least not discover all of the undisclosed assets.

Accordingly, in this case, the Court finds that the debtors' discharge should be denied pursuant to 11 U.S.C. § 727(a)(2).

## B. 11 U.S.C. § 727(a)(4)

"The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to do costly investigations." *United States Tr. v. Zhang (In re Zhang),* 463 B.R. 66, 86 (Bankr. S.D. Ohio 2012) (citation omitted). "Any debtor who files a Chapter 7 petition has a continuous, affirmative duty to disclose the following in a complete and accurate manner: (a) a list of creditors; (b) schedules of assets, liabilities, current income, and current expenditures; and (c) a statement of financial affairs." *Wilson & Muir Bank & Trust Co. v. Eifler (In re Eifler),* Bankr. No. 11-36154, Adv. No. 12-3052, 2013 WL 3300639, at *26 (Bankr. W.D. Ky. July 1, 2013) (citation omitted); *see also Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004) (citation omitted) ("When initiating the bankruptcy process, this means that a debtor is obligated to carefully consider and review the answers to all questions posed in the petition so as to ensure their veracity."). "In essence, '[s]ection 727(a)(4)(A) ensures that false, fraudulent statements by a debtor are not made without significant consequences.'" *Coleman v.*

*McLean (In re McLean)*, Bankr. No. 11-34791, Adv. No. 12-3057, 2013 WL 5863718, *3 (Bankr. E.D. Tenn. Oct. 30, 2013) (citation omitted).

A denial of discharge pursuant to 11 U.S.C. § 727(a)(4) for making a false oath or account requires proof that "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *In re Keeney,* 227 F.3d 679, 685 (citation omitted). "Both affirmative false statements and omissions fall within the scope of § 727(a)(4)(A)." *In re McLean*, at *3 (citation omitted). "The subject of a false oath is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Keeney,* 227 F.3d at 686 (citation and internal quotation marks omitted).

The U.S. Trustee submits that as sophisticated financial professionals, the debtors knew the extent of their property and the pre-petition transfers of their property. Given their prior experience with the bankruptcy system, the debtors knew the importance of honesty and accuracy in the completion of their Schedules and their individual Statement of Financial Affairs. By omitting the significant personal property and other significant financial information from their Schedules and Statement of Financial Affairs, the debtors attempted

to retain property, or the proceeds from the sale of property, and to hinder the Trustee's ability to fully investigate the debtors' finances.

Again, the debtors assert that the facts do not support a finding that they had the subjective intent to defraud. The debtors admit that they incorrectly filled out their Schedules and Statement of Financial Affairs. Regarding the disclosure of all property, the debtors assert that this was done with a sincere, yet erroneous, belief that they were properly listing the items they were seeking to retain, and that all other property would be liquidated by the Trustee. Other omissions were because the debtors forgot past business transactions or misunderstood the questions. The debtors submit that their explanations are plausible and do not evince fraudulent intent.

The U.S. Trustee's allegations are supported by the facts of this case:

1. In their original Schedules, the debtors omitted the personal property discovered during the surprise inventory. In their amended Schedules, filed on May 25, 2015, the debtors failed to accurately list or value this same property, only providing a narrative of additional personal property with an "unknown value." Even the Amendments did not disclose everything. For example, the Kubota, later sold for $9051, was never disclosed on any version of the debtors' Schedule B.

2. In their original and first amended Schedules, the debtors omitted guns that remained on consignment at the Franklin Gun Shop as well as jewelry that was sold.

3. In the original, first, and second amended Statement of Financial Affairs, the debtors omitted their pre-petition sale of guns (approximately $23,000)

15 - U.S. Bankruptcy Court, M.D. Tenn.

through the Franklin Gun Shop. These sales were not disclosed until the June 14, 2015, amendment.

4. In the original, first, and second amended Statement of Financial Affairs, the debtors omitted the pre-petition transfer of a horse barn in exchange for boarding. This transfer was not disclosed until the June 14, 2015, amendment.

5. In the original and first amended Statement of Financial Affairs, the debtors omitted their pre-petition sale of a 1960 Austin–Healy Sprite for $3500. This transfer was disclosed on the May 25, 2015, amendment.

6. The debtors failed to ever list their 100% membership interest in GPS.

7. The debtors failed to ever list their 2014 residential loan application.

8. The debtors undervalued their residence.

The debtors have bold excuses for every omission, but the Court does not find their answers to be credible. The debtors tried to blame their attorney, but Mr. Jackson went over the Statements and Schedules with the debtors line-by-line prior to filing the petition. The instructions are clear and not subject to the interpretations suggested by the debtors, who are educated and sophisticated business people. Based on the facts in this case, the cumulative omissions, and the credibility of the witnesses, the Court finds that these debtors had no regard for providing complete and accurate information in their Schedules and Statement of Financial Affairs. Amendments were made because of the Trustee's persistence in seeking out the truth. The debtors, who are educated, in business, and have prior experience with the bankruptcy system, are not entitled to a discharge when they fail to fill out their bankruptcy papers honestly and accurately. Accordingly, the Court finds that the debtors discharge should be denied pursuant to 11 U.S.C. § 727(a)(4) as well.

16 - U.S. Bankruptcy Court, M.D. Tenn.

### III. CONCLUSION

Accordingly, the Court finds that the debtors' discharge should be denied pursuant to

11 U.S.C. §§ 727(a)(2) and (a)(4).

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.